```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

LLOYD MARTIN AND NICOLE                    CIVIL ACTION
MARTIN, ET AL.

VERSUS                                     NO: 09- 4195

FIDELITY NATIONAL TITLE                    SECTION: R(4)
INSURANCE COMPANY

## ORDER AND REASONS

Before the Court is third-party defendants William Magee, James Coate, and Buddy Coate entities' motion for summary judgment.[1] Because the Court finds that third-party defendants are not entitled to summary judgment on any of their claims, the motion is DENIED.

## I. Background

This case arises out of an alleged defect in plaintiffs' title to a property in St. Tammany Parish, Louisiana ("Martin property"). William A. Nill acquired the parcel including the property on July 28, 1959. On February 14, 2001, Hickory Glade Inc. conveyed by quitclaim deed any interest it had in the Nill property to defendant William Magee in exchange for ten dollars. Hickory Glade is a Louisiana corporation created by William Magee, an attorney. Plaintiffs assert that Hickory Glade had no ownership interest in the Nill Property at that time.

---

[1] R. Doc. 151.

On April 9, 2002, Magee filed a petition for declaratory judgment in the 22nd Judicial District Court of Louisiana against Herbert and William Nill, their spouses, heirs, successors and assigns ("the Nills"). In that petition, Magee alleged that he had been in possession of the Nill Property for over one year. Magee asked the court to recognize his ownership of the property based on this one year of possession if the absent Nill defendants did not file a petitory action asserting any adverse claim of ownership within thirty days. Magee represented that the Nills could not be located and the court appointed Salvador Liberto as curator to represent the absent owner. Plaintiffs allege that Liberto did not contact William Nill's heirs. The state court granted a default judgment to Magee on September 13, 2002.

On April 28, 2005, Magee donated a 26.5 percent interest in the portion of the Nill Property containing the Martin Property to the Great Commission Foundation of Campus Crusade for Christ, Inc. Magee and the Great Commission sold that parcel to Buddy Coate, LLC (or a related Buddy Coate entity, "the Coate entity") on May 25, 2005 with full warranty of title. On August 16, 2005, Buddy Coate, represented by Magee, filed a petition for declaratory judgment and to quiet title against the Nills in the 22nd Judicial District Court requesting that the court recognize its right to possess the property. That petition states that

"the proposed purchaser [of the property] had an examination of the public records conducted which revealed an alleged disturbance in law affecting the subject property."[2]  It identifies that disturbance as the earlier declaratory judgment. The title examiner found that the judgment was "invalid" and did not "transfer title from the present defendants".[3]  The same curator was appointed to represent the absent Nills.  The state court granted default judgment to Buddy Coate on December 20, 2005.

Buddy Coate built homes on the property and then sold the individual lots.  On October 13, 2005, Buddy Coate sold the Martin Property to Mark and Kristen Graziani with full warranty of title.  Then, on January 31, 2007, the Grazianis sold the property to the Martins with full warranty of title.  On that date, the Martins also obtained title insurance on the property from Fidelity National Title Insurance Company, Inc.

In December of 2008, as the Martins prepared to sell the property to Adam and India Sachitano, they were informed by the closing agent for the Sachitanos that there was a problem with the title.  As a result, the Martins could not sell the property, and they still possess the property.  Plaintiffs made a claim against Fidelity under their title insurance policy on February

---

[2]   R. Doc. 160-2, p.6.

[3]   *Id.*

10, 2009.  They allege that Fidelity has not paid any part of their claim.  On June 29, 2009, the Martins sued Fidelity, alleging that Fidelity breached the title insurance policy, as well as certain penalty Louisiana statutes.  Fidelity filed a third-party complaint against William Magee, the Great Commission Foundation of Campus Crusade for Christ, Buddy Coate Homes and related entities, James Coate, and Mark and Kristen Graziani.[4]  Fidelity alleges that to the extent it is liable to plaintiffs under the title insurance policy, the third-party defendants are liable to Fidelity for breach of warranty of title and warranty against eviction.  The Grazianis, who sold the property to the Martins, then filed a cross-claim against the other third-party defendants on the same grounds.[5]  Third-party defendants William Magee, James Coate, and the Buddy Coate entities now move for summary judgment on the claims against them.[6]

## II.  Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid*

---

[4]   R. Doc. 8.

[5]   R. Doc. 24.

[6]   R. Doc. 151.

*Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may

5

satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. Discussion**

Third-party defendants assert four arguments in support of their motion for summary judgment: (1) that the Martins' title is merchantable; (2) that the Martins are unable to recover in warranty; (3) that Fidelity cannot recover in subrogation; and (4) that Fidelity insured the Martins despite alleged defects in the title and therefore cannot pass on its liability to third-party defendants.

    A.    *Merchantability of Title*

A merchantable title exists when a property can be "readily sold or mortgaged in the ordinary course of business by reasonable persons familiar with the facts and questions

involved." *Parker v. Machen*, 567 So.2d 739, 743 (La. Ct. App. 1990)(citing *Young v. Stevens*, 209 So.2d 68, 76 (La. 1969)). A title need not be perfect to be merchantable. The term merchantable "permits of defects which are not reasonably liable to result in attack." *Deleon v. WSIS Inc.*, 728 So.2d 1046, 1049 (La. Ct. App. 1999). A title is not merchantable, however, when an outstanding claim to the property that is suggestive of litigation exists. *Schaub v. O'Quin*, 38 So.2d 63, 65 (La. 1948); *Parker*, 567 So.2d at 743. In order for an outstanding claim to render property unmerchantable, the claim must be "of a substantial nature" such that it would "subject the vendee to serious litigation." *Kay v. Carter*, 150 So.2d 27, 29 (La. 1963); *see also Bart v. Wysocki*, 558 So.2d 1326, 1329 (La. Ct. App. 1990)("Title is deemed unmerchantable only when there are outstanding rights in a third person of a substantial nature against the property, subjecting the vendee to serious litigation.").

A cloud may render title unmerchantable. *See e.g.*, *Parker*, 567 So.2d at 743 (affirming the trial court's determination that title was unmerchantable when the title chain omitted certain heirs' rights, a reputable lawyer called the title questionable, and at least one sale fell through because of these problems); *Pierre v. Chevalier*, 233 So.2d 61, 66 (La. Ct. App. 1970)(holding that an adverse outstanding tax title on property constituted a

cloud on the title, suggestive of litigation, and rendered the title unmerchantable). A cloud on a title is an apparent title or encumbrance which is in fact invalid. *See Graves v. Ashburn*, 215 U.S. 331, 335 (1909)(holding that a deed was a cloud to title when its "invalidity does not appear upon its face, but rests partly on matter *in pais*"); *see also What Constitutes Cloud on Title Removable in Equity*, 78 ALR 24 ("A cloud on title is, as the term is generally used, an apparent title or encumbrance which is in fact invalid. The term is sometimes used with reference to the instrument, record, or proceeding which creates or evidences the apparent title or encumbrance.").

The quitclaim deed and two state court declaratory judgments are clouds on the title to the Martin Property. A quitclaim deed "purports to convey, and is understood to convey, nothing more than the interest or estate in the property described of which the grantor is seized or possessed, if any, at the time, rather than the property itself." *Waterman v. Tidewater Associated Oil Co.*, 35 So.2d 225, 230 (La. 1947)(finding that plaintiff, who acquired property through a conveyance occuring after a quitclaim, did not have title to property because the party that quitclaimed the property did not have a possessory interest in the property); *see* La. Civ. Code art. 2502. Even when "the transferor acquires ownership of the thing after having transferred his rights to it, the after-acquired title of the

transferor does not inure to the benefit of the transferee." LA. CIV. CODE art. 2502.  In 2001, Hickory Glade, Inc. executed a quitclaim deed purporting to convey title to the Nill Property to Magee.  This quitclaim transferred only the interest that Hickory Glade, Inc. possessed at that time.  Because Hickory Glade, Inc. was not the record owner of the property and had no interest in the property to quitclaim, the quitclaim did not transfer anything to Magee.  Accordingly, the quitclaim is a cloud on the Martin's title.

The two state court judgments relating to ownership of the property are also clouds on the Martin's title.  The first judgment declared Magee to be the owner of the property.  The second judgment declared the Coate entity to be the owner of the property.  The petitions were for declaratory judgment and to quiet title.  Magee and the Coate entity would not have been entitled to declaratory judgments if the Nills had been notified and defended their interest.

An "action to quiet title is an action to remove a cloud therefrom."[7]  *Daigle v. Pan-Am. Prod. Co.*, 108 So.2d 516, 518

---

[7]   Actions to quiet title are synonymous with actions to remove clouds from title. *See, e.g. Spencer*, 955 So.2d at 1292 (referring to the cause of action as one to quiet title or remove a cloud).  The two types of actions are sometimes distinguished from one another on the grounds that the reason for initiating an action to quiet title is to put an end to vexatious litigation whereas the an action to remove clouds seeks to remove a claim enabling future litigation. *Humble Oil & Refining Co. v. Sun Oil*

(La. 1959).  Louisiana law recognizes actions to quiet title. *Spencer v. James*, 955 So.2d 1287, 1293 (La. Ct. App. 2007)(citing *Walmsley v. Pan Am. Petroleum Corp.*, 153 So.2d 375, 380 (La. 1963)).  In an action to quiet title, a plaintiff "may sue for the cancellation of a recorded deed, mineral lease or other recorded instrument which allegedly operates as a cloud on his title." *Daigle*, 108 So.2d at 518.  A court may determine "the issue of title...as incidental to plaintiff's right to have the alleged cloud removed." *Id.*  A person who claims to be the owner of property may bring an action to quiet title to confirm his title.  *Standard Homes, Inc. v. Prestridge*, 193 So.2d 100 (La. Ct. App. 1966).  The requirements of an action to quiet title are: (1) claim of ownership; (2) existence of clouds; (3) description of property; and (4) prayer for cancellation of the clouds.  *See Parker v. Machen*, 567 So.2d 739, 742-43 (La. Ct. App. 1990); *Spencer*, 955 at 1287.  In their respective petitions for declaratory judgment and to quiet title, Magee and the Coate entity alleged the existence of clouds and sought to remove those clouds and confirm their title.

When determining ownership of property in an action for a declaratory judgment, the Court renders judgment for the party

---

*Co.*, 191 F.2d 705, 717-18 (5th Cir. 1951).  This distinction, however, does not impact the legal consequence of the action.  In both cases the purpose of the action is to remove clouds.

"[w]ho would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription". LA. CIV. CODE PROC. art. 3654. Neither Magee nor the Coate entity would have been entitled to the property in a possessory action, nor could they have proven that they acquired ownership from a previous owner. To maintain a possessory action, the possessor must show that: (1) he had possession of the immovable property or real right therein at the time the disturbance occurred; (2) he and his ancestors in title had such possession quietly and without interruption for more than a year immediately before the disturbance, unless evicted by force or fraud; (3) the disturbance was one in fact or in law; and (4) the possessory action was instituted within a year of the disturbance. LA. CIV. CODE art. 3658. A disturbance in law is "the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership." LA. CIV. CODE art. 3659. Here, the "disturbance" is the recorded title of William Nill. That title predated any possessory interest of Magee or the Coate entity, meaning that each would fail the first prong of the test. If Nill had been notified and defended his interest, neither Magee nor the Coate entity would have been entitled to a declaratory judgment.

11

Furthermore, at the time of the Martin's purchase, the Nills could arguably still attack the default judgments as null on the grounds of fraud or ill practices. *See* LA. CODE CIV. PROC. art 2004(a)("A final judgment obtained by fraud or ill practices may be annulled."). A relative annulment results from substantive defects in the judgment. *Id.; see also Champagne and Rodgers Realty Co., Inc. v. Henning,* 947 So.2d 39 (La. Ct. App. 2006) (explaining that the jurisprudence refers to nullities for "vices of substance" as relative nullities). Hickory Glade is a corporation created by William Magee and he was a director and officer of the corporation at the time of the quitclaim. Magee, therefore, was aware that the company had no interest in the property to quitclaim. Magee was also involved in both declaratory judgments. He was the plaintiff in the first declaratory judgment action and he represented Buddy Coate in the second. Therefore, arguably the Nills could challenge these judgments as relatively null. An action to annul for fraud must be brought within one year of the discovery of the fraud. LA. CODE CIV. PROC. art 2004(b). The Nills were not notified of the quitclaim or the subsequent declaratory judgments, and there is nothing in the record to suggest they were aware of these events. Thus, there is no basis for the Court to conclude that the prescriptive period ran on the Nills' ability to attack these transactions. The judgments remained clouds on the title when

12

the Martins purchased the property.

In addition, a title examiner found that the judgment declaring Magee the owner of the property was a cloud on the title. The Coate entity's petition for declaratory judgment, filed on August 17, 2005, states that a sale of the property did not close because "an examination of the public records...revealed an alleged disturbance in law affecting the subject property."[8] The petition explains that "the title examiner contends that [Magee's action to quiet title], from which petitioner's predecessors in title derive their title, is somehow invalid and does not transfer title from the present defendants."[9]

The Court finds that the quitclaim deed and state court declaratory judgments are clouds on the Martin's title precluding a grant of summary judgment on third-party defendants' claim that the Martin's title is merchantable.

B.  *Recovery in Warranty*

Third-party defendants argue that even if the title to the property is unmerchantable, the Martins cannot recover in warranty. They contend that under the public records doctrine, the Martins had constructive knowledge of the defects in their

---

[8]   R. Doc. 160, Ex. "J" at ¶ IV.

[9]   *Id.*

title, which forecloses an action in warranty. Third-party defendants are not entitled to summary judgment on this claim.

Under the public records doctrine, or the law of registry, "any sale, mortgage, privilege, contract or judgment affecting immovable property, which is required to be recorded, is utterly null and void as to third persons unless recorded." *Phillips v. Parker*, 483 So.2d 972, 975 (La. 1986). In *Phillips*, the lower courts held that the defendants did not have the right to claim acquisitive prescription, based on lack of good faith, because their attorney failed to discover an earlier sale in the public records. The holding was based on a theory that constructive knowledge is derived from public records. The Louisiana Supreme Court rejected this application of the public records doctrine, explaining that "[a]ny theory of constructive knowledge which imputes knowledge of the contents of the public records to third persons forms no part of the public records doctrine." *Id.* The Court emphasized that the public records doctrine is a negative doctrine that "does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded." *Id.* The protection the public records doctrine grants to third parties is significant "only when an interest which is required to be recorded is *not recorded*." *Id.* According to third-party defendants, the public record doctrine imputes knowledge to the

14

Martins of the title defect that is evident in the public record. This argument is foreclosed by the Court's decision in *Phillips* and does not defeat a warranty claim by the Martins.

C.  *Fidelity's Ability to Recover in Subrogation*

This Court also rejects third-party defendants' argument that Fidelity cannot recover in subrogation because the Martins cannot recover in warranty. Subrogation is "the substitution of one person to the rights of another." LA. CIV. CODE art. 1825. Third-party defendants assert that Fidelity is the subrogee of the Martins, and therefore Fidelity's right to recover cannot be any greater than the Martin's right to recover. Even if Fidelity's ability to recover is limited to the extent of the Martins' recovery, third-party defendants have not demonstrated that there is no legal or factual basis for the Martins recovery against Fidelity. This precludes a grant of summary judgment concerning Fidelity's ability to recover in subrogation.

D. *"Insuring Over" Title Defects*

Although third-party defendants strenuously argue that there are no clouds on the Martin's title, they simultaneously argue that Fidelity insured over title defects. Third-party defendants assert that Mahony Title Service's investigation of the public record charges Fidelity with "full legal knowledge of the public

record,"[10] and that Fidelity proceeded at its own risk and peril because it "insured over" the known defects.[11] According to third-party defendants this voluntary assumption of risk means that Fidelity cannot recover from anyone in the chain of title.

Third-party defendants rely on *Bozeman v. Commonwealth Land Title Ins. Co.* to support their argument. 470 So.2d 465 (La. Ct. App. 1985). In *Bozeman*, the Court held that a policy provision excluding coverage for defects would not defeat coverage when the insurer knowingly insured over a defect. *Id.* at 467. In *Bozeman*, there was no question that the insurer issued the insurance policy "with full knowledge of a servitude, accepted the risk, and agreed to insure 'over' the servitude in future policies as well." *Id.* Here, there is simply no evidence that Fidelity knew of the defects in the Martin's title and insured over them. Indeed, the policy lists no defects as exceptions from coverage. Third-party defendants attempt to rely on the public records doctrine to argue that Fidelity had constructive knowledge of the title defect. For the reasons explained above, this application of the public records doctrine is incorrect. The public record doctrine, by requiring certain documents be recorded to be valid, acts to protect third persons from unrecorded deeds. It does not impute knowledge to Fidelity in this context.

---

[10]     R. Doc. 151-1 at 22.

[11]     *Id.*

In addition, the Court notes that title insurance is a contract of indemnity. *Rube v. Pacific Ins. Co.*, 131 So.2d 240, 243 (La. Ct. App. 1961); *Bank of Jeanerette v. Lawyers Title Ins. Corp.*, No. 08-0913, 2010 WL 3734056, at *3 (W.D. La. Aug. 12, 2010). Title insurance does not guarantee the legal validity of title. Rather, it indemnifies the insured against loss caused by title defects, which are not excluded or excepted from the policy. The critical issue, therefore, is not Fidelity's knowledge at the time of the issuance of the insurance policy, but the contents of that agreement. In this case, Fidelity did not list any defects that it exempted from coverage, so it is obligated to the Martins for losses stemming from the defects in title and subrogated to their rights.

## IV. Conclusion

For the foregoing reasons, third-party defendants' motion for summary judgment is DENIED.

New Orleans, Louisiana, this __26th__ day of September, 2011.

_____
**SARAH S. VANCE**
**UNITED STATES DISTRICT JUDGE**